**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **SUN NA LEE**, also known as Sunna Lee, Defendant–Appellant

NO. 16093

(CR. NO. 91–2179)

AUGUST 16, 1993

MOON, C.J., KLEIN AND LEVINSON, JJ.,
AND CIRCUIT JUDGES CRANDALL AND
HUDDY, APPOINTED BY REASON
OF VACANCIES

OPINION OF THE COURT BY MOON, C.J.

Defendant–appellant Sun Na Lee (Lee), subsequent to jury trial, appeals her conviction on five counts of illegally selling drug paraphernalia, in violation of Hawaiʻi Revised Statutes (HRS) § 329–43.5. Because we conclude that the jury instructions in this case were fatally flawed, we vacate Lee's conviction and sentence and remand for new trial.

## I. **BACKGROUND**

Lee is the sole owner and operator of a convenience store called the Roadrunner Mini–Mart located in Waipahu. The store sells groceries, liquor, and various sundry items. Based on evidence gathered during the course of a three–month police undercover investigation, Lee was indicted on January 8, 1991 (first indictment) on five separate counts of violating HRS § 329–43.5(b) (Supp. 1992), which provides:

> It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

Specifically, the State of Hawai'i (prosecution) charged that Lee had sold glass pipes, which can be used for smoking crystal methamphetamine or cocaine, to an undercover police officer on five different occasions between November 1989 and February 1990.

Lee filed a motion to dismiss the indictment on June 10, 1991. She claimed that HRS § 329–43.5(b) was unconstitutionally vague as applied to her, in violation of both the Hawai'i and United States Constitutions. Lee further claimed that the statute lacks a "cognizable *scienter* requirement" in violation of HRS § 702–204.

Subsequent to a hearing, the circuit court entered a written order, filed July 25, 1991, granting the motion. Although the court found that HRS § 329–43.5(b) is neither unconstitutionally vague on its face nor as applied to Lee, it also determined that the prosecution had failed to proffer any evidence "to establish that there existed facts to support the requisite state of mind of the [d]efendant when she actually delivered the items" to the undercover

police officer. The court, therefore, dismissed the first indictment without prejudice.

On August 22, 1991, Lee was again indicted (second indictment) on the same five counts of illegally selling drug paraphernalia. Prior to the start of trial, at Lee's request, the court took judicial notice of all "the records and files" in connection with the July 25 order granting Lee's motion to dismiss the first indictment, including the findings and rulings on the constitutionality of HRS § 329–43.5(b).

In its opening statement, the prosecution advised the jury that Honolulu Police Department (HPD) Officer Bruce Matthews (Matthews), the undercover police officer assigned to Lee's case, would testify that on five separate occasions he had been sold drug paraphernalia by Lee. Following opening statements, Lee moved for a judgment of acquittal. Relying on *State v. Murphy*, 674 P.2d 1220 (Utah 1983), Lee argued that it would be factually and legally impossible for the prosecution to demonstrate that Lee knew the glass pipes would be used for an illegal purpose, as required by HRS § 329–43.5(b), because, as an undercover police officer, Matthews could not have had the intent to use the alleged drug paraphernalia for an illegal purpose. The court, however, denied Lee's motion.

Matthews was the prosecution's only witness and testified as to what transpired during the five separate occasions when Lee sold him the alleged drug paraphernalia:

(1) *November 17, 1989* — He entered the store and asked Lee if he could buy a "meth pipe."[1] Lee responded

---

[1] Based on four years of experience in "the narcotics field," Matthews testified that "meth" is the street name for crystal methamphetamine (meth). He further stated that the kind of glass pipe which Lee sold him

that he was "supposed to ask for an incense burner." When Matthews retorted, "OK. A meth burner," Lee then reached "down under the counter" and brought out "a plastic bag with a blue card on it that it [sic] contained a clear glass pipe and a vial of red liquid[,]" which Matthews purchased.

(2) *November 27, 1989* — On this date, Matthews returned to the mini–mart and asked Lee if she had any "coke water pipes" for sale. Lee responded "yeah," and reached down under the counter for a "clear glass pipe." He also asked Lee if he needed "any screens for the pipe," which Lee then gave him. Lee also "pointed in a general direction of where the screens go on the pipe." [2]

On this occasion, Matthews also asked Lee whether she had any "meth pipe[s] or marijuana pipe[s]" for sale, and she responded that "she didn't have any more left and that the company might not send any back."

(3) *December 20, 1989* — Matthews again entered the store and asked Lee for a "meth pipe" and whether he could "buy ice" or "a paper." [3] Lee responded that she did not sell drugs. When Matthews again asked Lee for a "meth pipe," Matthews believed Lee "told me I'm not

---

"is to ingest or inhale [meth] into the human body." Matthews also demonstrated for the jury how that type of pipe could be used to smoke crystal methamphetamine.

[2] Matthews explained to the jury that "coke" is the street vernacular for cocaine. He also explained that the screens are "to filter, I guess, cocaine residue from entering the pipe and being held." Based on his experience, Matthews testified that the pipe he was sold on this occasion "is commonly associated with ingestion or inhalation of cocaine into the human body." He again demonstrated for the jury how the pipe could be used to smoke cocaine.

[3] Matthews explained that "ice" is slang for meth, and that "a paper" is slang for "maybe a tenth of a gram of [meth]."

supposed to call it a meth pipe;" she again told him he should be asking for an "incense burner." Lee then proceeded to sell Matthews a pipe that was essentially identical to the one he had purchased on November 17.

(4) *January 8, 1990* — Matthews purchased another "meth pipe" from Lee.

(5) *February 8, 1990* — Matthews again entered the store and asked Lee for a "meth pipe," and she again told him "to call it an incense burner." He responded "yeah, meth burner," and Lee sold him a pipe essentially identical to all the other "meth pipes" he had previously purchased from her.

Matthews stated that on all five occasions, the pipes had not been displayed in plain view in the store, and that Lee had brought them out from "behind the counter and cash register area."

On cross–examination, Matthews stated that he never had any intention of using the pipes he had purchased for any illegal purpose. He also admitted that all the "meth pipes" were packaged with directions for use as "liquid incense burner[s] and room deodorizer[s]." The directions specified that "you place six to eight drops of the liquid incense [from the vial] into a glass bubble [in the "pipe"] and hold a lighter or a candle under the bubble until the incense begins to smoke and blow gently through the mouthpiece to disburse [sic] the scent throughout the room."

Matthews also admitted that the glass pipes he had purchased from Lee are commonly referred to as "meth pipe[s]" in the same way that "an electric alligator clip" used in "electrical matters" is commonly referred to as a "roach clip," which is also the street vernacular for a device used in smoking marijuana cigarettes. Matthews agreed that "meth pipe" could be considered the common

name for the items he had purchased from Lee, and that therefore the fact that a buyer referred to the items as "meth pipes" would not necessarily indicate that the buyer wanted them for an illicit purpose. Moreover, he agreed that Lee did not seem to have a firm mastery of English, and that English was probably her second language.

Following Matthews' testimony, the prosecution rested. Lee again moved for a judgment of acquittal, and, again relying on *Murphy*, essentially argued that the prosecution had failed to demonstrate that Lee had knowledge that Matthews was going to use the pipes he had purchased for an illegal purpose, as required by the statute. The court denied the motion.

Lee then testified that she owned the store, worked at least eight hours per day, seven days a week, and during that time, normally served "many, many peoples." She stated that she distinctly remembered Matthews "only couple times." She testified that on one particular occasion

> him come in, he ask me the ice; so I point him behind [to where the store's ice machine is located], ice over there. He was stand kind of far away. So he said — he look at back, he say, "not this kine ice." So what kine ice? He say "Crystal meth." I don't remember which word but some kind of dope kind ask.
>
> So I tell him, "Why you crazy. We don't have that kine." Kind of shame and mad; so he say, oh, somebody say we sell the ice. I say no. I kind of mad; so he say okay, then he move back and come back, stay in line, and he ask the pipe. So we don't have a pipe. Then that's incense burner. Then he say "incense burner," so that's what I remember him.

Lee later stated that Matthews did not ask for a "pipe," but for a "glass pipe," and that she had answered "no glass pipe. I say '[i]ncense burner.' He say '[o]kay. Incense burner.'"

Lee testified that she did not remember Matthews asking for or buying a "coke pipe" from her. She also testified that she did not think he could have asked her for a coke pipe "because I don't know what is coke." When counsel asked Lee where she bought all "these pipes and stuff," Lee stated that she purchased them from a mainland business called "Pipe Dreams Company."

On cross–examination, Lee stated that she did not know how many "meth pipes" she sold and that she could not characterize the kind of customer who bought them. The prosecution's brief cross–examination of Lee ended with the following colloquy:

> Q. [The Prosecution] You're aware that the street name for — you know what crystal meth is, crystal methamphetamine?
>
> A. [Lee] Actually, I don't know.
>
> Q. You don't know?
>
> A. Yeah.
>
> Q. You don't know that these pipes are used to smoke crystal meth, ice?
>
> A. I don't know.
>
> Q. You don't know?
>
> A. I never see crystal meth.
>
> Q. But you are aware — but you did know when a person talked about a pipe that you gave him this; correct?
>
> A. No, I don't give to pipe. We say incense burner I give to.

Q. When he asked for pipe, you give this incense burner. That what you say?

A. Incense burner is incense burner; so I said nobody ask the pipe.

Q. When you testified earlier that the officer asked for a pipe, and instead of a pipe you gave him this; correct?

A. Yes, uh–huh.

Following Lee's testimony, the defense rested. Lee renewed her motion for a judgment of acquittal, which the court again denied.

The jury subsequently found Lee guilty as charged on all five counts of violating HRS § 329–43.5(b). She was sentenced to five years probation on each count, with all terms to run concurrently. Lee now appeals her conviction and sentence, contending that: 1) HRS § 329–43.5(b) is unconstitutionally vague; 2) the trial court erred in denying her motions for a judgment of acquittal; 3) the trial court erroneously refused certain of her proffered jury instructions; and 4) HRS § 329–43.5(b) lacks a *scienter* requirement in violation of HRS § 702–204.

## II. DISCUSSION

### A. Constitutionality of HRS § 329–43.5(b)

Lee first argues that HRS § 329–43.5(b) is unconstitutionally vague. The constitutionality of a statute is a question of law which is reviewable under the right/wrong standard. *See Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (conclusions of law are freely reviewable for correctness). Additionally, "where it is alleged that the legislature has acted unconstitutionally, this court '[has] consistently

held . . . that every enactment of the legislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt . . . . [T]he infraction should be plain, clear, manifest, and unmistakable.' " **Blair v. Cayetano**, 73 Haw. 536, 541–42, 836 P.2d 1066, 1069, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (quoting **Schwab v. Ariyoshi**, 58 Haw. 25, 31, 564 P.2d 135, 139 (1977)).[4]

Although Lee's initial motion to dismiss the first indictment was partially premised on a claim that the statute was unconstitutionally vague as applied to her, she has expressly appealed the circuit court's July 25, 1991 order, incorporated in the trial of the second indictment, which stated that HRS § 329–43.5(b) is neither unconstitutionally vague on its face, nor as applied to her. However, Lee's argument on appeal appears to be solely a facial attack on the statute. Nowhere does she contend that HRS § 329–43.5(b) is unconstitutionally vague as applied to her in particular. Moreover, every case she cites in support of her position was specifically concerned with a facial attack on a drug paraphernalia law. Therefore, we shall consider Lee's argument as a facial attack on the constitutionality of HRS § 329–43.5(b).

Additionally, although in her original motion to dismiss the first indictment Lee claimed that HRS

---

[4] Such presumptive constitutionality does not apply for purposes of equal protection analysis in the case of statutes, which on their face classify on the basis of suspect categories such as race or sex. *See* **Baehr v. Lewin**, 74 Haw. 530, 571–72, 852 P.2d 44, 63–64, *reconsideration denied*, 74 Haw. 650, 852 P.2d 74 (1993). However, the statute at issue in the instant case does not contain any suspect categories.

§ 329–43.5(b) was vague, in violation of both the Hawai'i and United States Constitutions, she makes no mention of the Hawai'i Constitution or of any Hawai'i case law concerning vagueness challenges to the constitutionality of statutes in her brief. Instead, Lee derives her standards for vagueness challenges from federal law, and virtually all the cases she relies on are federal court decisions applying federal law to statutes and municipal ordinances. Therefore, we shall also consider Lee's vagueness challenge to HRS § 329–43.5(b) as one premised solely on the due process clause of the United States Constitution.

Even if Lee were to have claimed that the statute is unconstitutionally vague under the Hawai'i State Constitution, the result would be the same. To date, this court has treated claims that a criminal statute is unconstitutionally vague as essentially facial attacks, subject to the following standard:

> Due process of law requires that a penal statute state with reasonable clarity the act it proscribes and provide fixed standards for adjudging guilt, or the statute is void for vagueness. *State v. Kameenui*, 69 Haw. 620, 621, 753 P.2d 1250, 1251 (1988). Statutes must give the person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may choose between lawful and unlawful conduct. *Id.*

*State v. Tripp*, 71 Haw. 479, 482, 795 P.2d 280, 282 (1990). This standard is essentially indistinguishable from the applicable standard under federal law. Thus, we have so far not departed from federal constitutional law in the area of "void for vagueness" challenges to criminal statutes.

As previously noted, HRS § 329–43.5(b) provides in relevant part that "[i]t is unlawful for any person to deliver . . . drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to . . . introduce into the human body a controlled substance[.]" Lee first correctly points out that under the applicable federal law, a criminal statute is void for vagueness unless: it 1) "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly[;]" and 2) "provide[s] explicit standards for those who apply" the statute, in order to avoid "arbitrary and discriminatory enforcement" and the "delegat[ion] of basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis[.]" ***Grayned v. City of Rockford***, 408 U.S. 104, 108–09 (1972).

Lee then complains that the statutory requirement keyed by the phrase "or under circumstances where one reasonably should know" "introduces a vague negligence or constructive knowledge standard into a statute where it is specific intent alone that can save a statute from unconstitutional vagueness." Essentially, Lee argues that the phrase at issue cannot meet the vagueness standards set forth by the Supreme Court in *Grayned* because the "reasonably should know" language is not precise enough to either adequately notify a person of reasonable intelligence precisely what is prohibited or provide sufficiently explicit standards for those who must apply the law.

HRS § 329–43.5(b) was enacted by the legislature in 1988 (Act 259) as one of a number of additions to HRS chapter 329, the Uniform Controlled Substances Act. Along with the newly prohibited acts related to drug paraphernalia included in HRS § 329–43.5(b), the legislature

also revised HRS § 329–1, the general definitions section, to include a definition of drug paraphernalia, which provides in relevant part: " 'Drug paraphernalia' means all equipment, products, and materials of any kind which are used, intended for use, or designed for use, in . . . ingesting, inhaling, or otherwise introducing into the human body a controlled substance[.]" HRS § 329–1 (Supp. 1992). The definition then lists twelve non–exclusive groups of several specific types of items which are to be considered drug paraphernalia if "used, intended for use, or designed for use" with illegal drugs. Finally, the definition includes a list of fourteen specific "factors" which, "in addition to all other logically relevant factors," a "court or other authority should consider" in determining "whether an object is drug paraphernalia." [5]

---

[5] Under HRS § 329–1 (Supp. 1992), the fourteen factors to consider in determining whether an object is drug paraphernalia are as follows:

(1) Statements by an owner or by anyone in control of the object concerning its use;

(2) Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance;

(3) The proximity of the object, in time and space, to a direct violation of this chapter;

(4) The proximity of the object to controlled substances;

(5) The existence of any residue of controlled substances on the object;

(6) Direct or circumstantial evidence of the intent of the owner, or of anyone in control of the object, to deliver it to a person or persons whom the owner or person in control knows, or should reasonably know, intend to use the object to facilitate a violation of this chapter; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this chapter shall not prevent a finding that the object is intended for use, or designed for use as drug paraphernalia;

Reporting on Senate Bill No. 151, which became Act 259, the Senate Judiciary Committee stated that

[t]he purpose of this bill is to prohibit the manufacture or sale of drug paraphernalia . . . . One of the major arguments against passing the bill pointed to the difficulty in identifying materials such as smoking pipes, which are used in smoking or using drugs, and which will therefore be illegal. Your Committee is aware, however, that the bill is designed to cure this problem because it uses the language from the federal model drug enforcement act. Testimony was presented that thirty–seven states and the District of Columbia have now passed this model act, and where the act has been tested in the courts, it has been found constitutional.

Sen. Stand. Comm. Rep. No. 755, 1987 Senate Journal, at 1216.

Likewise, the House committee which considered the bill, reported that it proposed the adoption of the Model

---

(7) Instructions, oral or written, provided with the object concerning its use;

(8) Descriptive materials accompanying the object which explain or depict its use;

(9) National and local advertising concerning its use;

(10) The manner in which the object is displayed for sale;

(11) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items in the community, such as a licensed distributor or dealer of tobacco products;

(12) Direct or circumstantial evidence of the ratio of sales of the object or objects to the total sales of the business enterprise;

(13) The existence and scope of legitimate uses for the object in the community; and

(14) Expert testimony concerning its use.

Drug Paraphernalia Act (MDPA), drafted by the federal Drug Enforcement Agency (DEA), as a model for adoption by state legislatures. Hse. Stand. Comm. Rep. No. 3–88, 1988 House Journal, at 850. In fact, the extensive and detailed definition of drug paraphernalia contained in HRS § 329–1 and the language of HRS § 329–43.5 on prohibited acts related to drug paraphernalia are, in all relevant respects, identical to the language of the MDPA. *See Franza v. Carey*, 518 F. Supp. 324, 344–46 (S.D.N.Y. 1981) (text of MDPA set forth in Appendix A).

Prior to the publication of the MDPA, several state legislatures had attempted to deal with what they saw as the burgeoning illicit drug use problem in this country by passing laws designed to prohibit the sale of drug paraphernalia, that is, instruments or objects used to somehow further the use of illegal drugs. The primary problem faced by this early legislation was the extreme difficulty in clearly defining so–called drug paraphernalia because objects as innocuous as a spoon or a plastic bag can be used to further the use of illicit drugs under certain circumstances. As a result, these early drug paraphernalia laws invariably succumbed to vagueness challenges. *See* Note, *The Model Drug Paraphernalia Act: Can We Outlaw Head Shops — And Should We?*, 16 Ga. L. Rev. 137, 144–48 (1981).

At the urging of various state governments, the DEA in 1979 drafted and promulgated the MDPA, which was specifically designed to withstand constitutional challenges on vagueness and other grounds. *Id.* In the years immediately following promulgation of the MDPA, a number of states and municipalities adopted drug paraphernalia statutes and ordinances based in varying degrees on the model act. Most, if not all these laws were subsequently challenged, primarily on grounds of

vagueness and overbreadth, and most often in federal court. *See* Annotation, *Validity, Under Federal Constitution, of So–Called "Head Shop" Ordinances or Statutes, Prohibiting Manufacture and Sale of Drug Use Related Paraphernalia*, 69 A.L.R. Fed. 15 (1984 and Supp. 1992) (hereafter, Annotation).

Because different jurisdictions adopted different versions of the MDPA, a good number of these cases from the early 1980's are inapposite to the case before us. For example, not all jurisdictions with MDPA–based drug paraphernalia statutes or ordinances included the particular phrase at issue in this case. *See, e.g.*, ***Tobacco Accessories & Novelty Craftsmen Merchants Ass'n v. Treen***, 681 F.2d 378 (5th Cir. 1982) (Louisiana statute did not contain "reasonably should know" language); ***Atkins v. Clements***, 529 F. Supp. 735 (N.D. Tex. 1981) (Texas statute did not contain "reasonably should know" language). However, at least as of 1984,

> [f]or the most part, the Model Act would seem to have accomplished its objective of avoiding constitutional deficiencies. Since the advent of the Act, most of the state and local head shop laws enacted have been patterned after it and, although in several cases such laws have been held unconstitutional in whole or in part, they generally have been upheld when facially challenged on constitutional grounds.

Annotation, 69 A.L.R. Fed at 23–24 (footnotes omitted). And by 1985, a state appellate court considering a vagueness challenge to that state's MDPA–based drug paraphernalia statute could declare that "[e]very federal circuit court that has considered a vagueness challenge to an enactment based on the Model Act has upheld the

enactment." *People v. Nelson*, 171 Cal. App. 3d Supp. 1, 13, 218 Cal. Rptr. 279, 286 (1985).

In fact, Lee has failed to cite a single relevant case which holds that the "reasonably should know" language at issue is void for vagueness. The most recent cases she cites are two state court decisions from 1983, and neither of them is apposite to the present case because neither of the two jurisdictions had adopted the "reasonably should know" language from the MDPA. *See Town Tobacconist v. Kimmelman*, 94 N.J. 85, 462 A.2d 573 (1983); *see also State v. Murphy*, 674 P.2d 1220 (Utah 1983).

Additionally, all of the federal decisions cited by Lee,[6] except one, are inapposite to the present case. In each of those cases, the particular drug paraphernalia statute or ordinance in question was significantly different from both the MDPA and HRS § 329–43.5(b), either because the "reasonably should know" language had not been adopted or was not at issue. The one exception, *N.E. Accessories Trade Association v. Browne*, 502 F. Supp. 1245 (D. Conn. 1980), did hold that the "reasonably should know" language rendered the MDPA–based Connecticut statute void for vagueness. However, *Browne* was subsequently vacated and remanded by the Second Circuit Court of Appeals in *N.E. Accessories Trade Association v. Browne*, 679 F.2d 873 (2d Cir. 1981). Lee has thus failed to cite any convincing authority in support of her vagueness challenge to HRS § 329–43.5(b).

---

[6] *Levas and Levas v. Village of Antioch, Ill.*, 684 F.2d 446 (7th Cir. 1982); *Tobacco Accessories & Novelty Craftslmen Merchants Ass'n v. Treen*, 681 F.2d 378 (5th Cir. 1982); *New England Accessories Trade Ass'n v. City of Nashua*, 679 F.2d 1 (1st Cir. 1982); *Atkins v. Clements*, 529 F. Supp. 735 (N.D. Texas 1981); *Franza v. Carey*, 518 F. Supp. 324 (S.D.N.Y. 1981); *Gasser v. Morgan*, 498 F. Supp. 1154 (N.D. Ala. 1980).

Conversely, with but one possible exception,[7] we have not found a federal or state decision holding an MDPA–based drug paraphernalia law that includes the MDPA definition of drug paraphernalia void for vagueness because of the "reasonably should know" phrase at issue. In the early 1980's, various federal circuit courts developed a specific analysis of MDPA–based laws (the federal analysis) that allowed a statute or ordinance derived from the model act to withstand a vagueness challenge to the "reasonably should know" language, and this analysis was subsequently adopted by most state appellate courts faced with the same issue.

The federal courts first scrutinized the definitional section of the act and ruled that the phrase "intended for use" necessarily refers to the intention of the person charged with an offense under the prohibitions section. Therefore, in the case of a merchant seller, the instrument or object sold would be considered illegal drug paraphernalia if, and only if, the seller specifically intended that the instrument or object be used with a controlled substance in one of the myriad ways specified by the statute. The federal courts then reasoned that because the act first requires a specific intention on the part of the defendant–seller, the subsequent additional requirement of knowledge or "constructive knowledge" on the seller's part that the buyer will actually use the drug paraphernalia illegally cannot render the act void for vagueness.

In *New England Accessories Trade Association v. Tierney*, 691 F.2d 35 (1st Cir. 1982), the First Circuit Court of Appeals provided a very clear and detailed demonstration of the federal analysis:

---

[7] *See* **Papa Nick's Specialties, Inc. v. Harrod**, 747 F. Supp. 1240 (N.D. Ohio 1990), discussed *infra*.

"[T]he 'intended for use' language applies to the state of mind of the individual charged with the offense of selling, distributing, or displaying drug paraphernalia[.]" . . . [T]he definitional section itself . . . requires proof of the defendant's intent.

Once the definitional section is so read, [the] further argument that [the prohibitions section] which makes it "unlawful for any person to traffic in or furnish drug paraphernalia, knowing, *or under circumstances where one reasonably should know*" that it will be used for illegal drug purposes, permits conviction on a negligence standard looses [sic] its foundation. This is because in view of the definitional section — which, as interpreted, renders an item in a seller's hands drug paraphernalia only if the seller intends it to be used with scheduled drugs — constructive knowledge of the buyer's purpose alone is not enough for conviction:

> In the context of an alleged sale or delivery of drug paraphernalia, the Act requires the state to prove both (1) that the defendant intended that an item would be used for the production or consumption of controlled substances and also (2) that he [or she] either knew, or that he [or she] acted in a set of circumstances from which a reasonable person would know, that the buyer of the item would thereafter use it for those purposes. So—called constructive knowledge thus has significance only in a situation where the defendant is selling or delivering items that he intends to be used to

produce or consume illicit drugs in the first place. The legitimate merchant who sells innocuous items need make no judgment about the purpose of the buyer based upon the surrounding circumstances. The dealer, on the other hand, who sells innocuous items with the intent that they be used with drugs is, in effect, put on notice by the illicit nature of his activity that he must be careful to conform his conduct to the law. Even the illicit dealer, however, is not held legally responsible . . . for guessing what is in the mind of a buyer. The seller is safe as long as he does not actually know the buyer's purpose and as long as the objective facts that are there for him to observe do not give fair notice that illegal uses will ensue.

*Id.* at 36–37 (emphasis in original) (citations omitted). *Accord* **Camille Corp. v. Phares**, 705 F.2d 223 (7th Cir. 1983); **Stoianoff v. Montana**, 695 F.2d 1214 (9th Cir. 1983); **Kansas Retail Trade Cooperative v. Stephan**, 695 F.2d 1343 (10th Cir. 1982); **Florida Businessmen for Free Enterprise v. City of Hollywood**, 673 F.2d 1213 (11th Cir. 1982); **Florida Businessmen for Free Enterprise v. City of Homestead**, 679 F.2d 252 (1982), *cert. denied*, 459 U.S. 1127 (1983); **Casbah, Inc. v. Thone**, 651 F.2d 551 (8th Cir. 1981), *cert. denied*, 455 U.S. 1005, *reh'g denied*, 456 U.S. 950 (1982); **Com. v. Jasmin**, 396 Mass. 653, 487 N.E.2d 1383 (1986); **State v. Munson**, 714 S.W.2d 515 (Mo. 1986); **Com. v. Lacey**, 344 Pa. Super. 576, 496 A.2d 1256 (1985); **People v. Nelson**, 171 Cal. App. 3d Supp. 1, 218 Cal. Rptr. 279 (1985); **State**

*v. Newman*, 108 Idaho 5, 696 P.2d 856 (1985), *modified*, *State v. Bitt*, 118 Idaho 584, 798 P.2d 43 (1990).

In *Papa Nick's*, the only decision we have found which holds that the "reasonably should know" phrase renders an MDPA–based law void for vagueness, the court ruled that in order to save Ohio's recently–enacted drug paraphernalia statute, it was required to sever the offending phrase from the law. The court explained that it was merely adhering to the direction of its controlling federal circuit court, the Sixth Circuit Court of Appeals. *Papa Nick's*, 747 F. Supp. at 1242.

In 1980, another Ohio federal district court had ruled that in order to save a newly–enacted MDPA–based city ordinance, the phrase at issue must be severed from the law. *Record Revolution No. 6 v. City of Parma, Ohio*, 492 F. Supp. 1157 (N.D. Ohio, E.D. 1980). On appeal, the Sixth Circuit struck down the entire ordinance, holding that the phrase "designed for use" in the law's definitional section rendered the ordinance void for vagueness. *Record Revolution No. 6, Inc. v. City of Parma, Ohio*, 638 F.2d 916 (6th Cir. 1980). However, both this decision and a subsequent Sixth Circuit decision again striking the ordinance were vacated and remanded for reconsideration by the United States Supreme Court. *See City of Parma, Ohio v. Record Revolution No. 6, Inc.*, 451 U.S. 1013 (1981), and *City of Parma, Ohio v. Record Revolution No. 6, Inc.*, 456 U.S. 968 (1982). On its third consideration of the case, the Sixth Circuit, noting that "[s]ince [it] had issued its initial opinion in 1980, virtually every other challenge to the Model Act ha[d] proved unsuccessful," finally affirmed the original decision of the district court. *Record Revolution No. 6, Inc. v. City of Parma, Ohio*, 709 F.2d 534 (6th Cir. 1983). However, the circuit court also stated that it was "mindful of the

carefully–drawn limitations which the district court placed upon the operation[] of [the ordinance] before determining that the end product was constitutional. These boundaries are not to be overstepped." *Id.* at 536.

The district court in *Papa Nick's* interpreted this statement by the Sixth Circuit to mean that the phrase at issue, which the district court in the original *Record Revolution* case had ordered severed from the ordinance, must be severed from any drug paraphernalia law in order to save the law from a vagueness challenge. Thus, as the prosecution admits, there does appear to be some slender and somewhat ambiguous authority for Lee's position in this case. However, as the prosecution also correctly avers, the clear and overwhelming weight of authority is on the side of upholding the constitutionality of an MDPA–based law.

The virtual consensus of federal and state courts that have ruled on the instant issue holds that the specific intent requirement contained in the definitional section of the MDPA is sufficient to meet the due process standards of *Grayned*. Because the prosecution must prove that a defendant has sold an object with the specific intent that the object be used with a controlled substance before the additional "reasonably should know" requirement can even be considered, the MDPA does notify a person of reasonable intelligence what it prohibits and does provide explicit standards to guide law enforcement. We now adopt the foregoing federal analysis and hold that HRS § 329–43.5(b) is therefore not void for vagueness.

## B. **The Trial Court's Erroneous Instruction**

In the present case, the prosecution was required to prove beyond a reasonable doubt that when Lee sold the glass pipes to Matthews, she intended that the pipes be

used to introduce a controlled substance into the human body. Thus, proving Lee's intention would be sufficient to identify the pipes as drug paraphernalia under HRS § 329–1. Additionally, the prosecution was required to prove beyond a reasonable doubt that Lee knew or that the objective circumstances of the sale would have caused a reasonable person to know that Matthews would use the pipes to introduce a controlled substance into the human body. The prosecution admits that this additional statutory requirement would only arise after Lee's intention had been determined.[8]

However, the specific instructions given to the jury by the trial court in the instant case were fatally flawed. The court began correctly by basically tracking the language of HRS § 329–43.5(b):

> A person commits the offense of Unlawful Delivery of Drug Paraphernalia if the person delivers or possesses with intent to deliver, drug paraphernalia, knowing or under circumstances where one reasonably should know that it will be used to inject, ingest, inhale or otherwise introduce into the human body a controlled substance.

State's Instruction No. 1.

According to the federal analysis, HRS § 329–43.5(b) comprises essentially two elements: 1) that defendant delivered an object with the intent that the object be used to introduce a controlled substance into the human body ("if the person delivers . . . drug paraphernalia"); and 2)

---

[8] The prosecution, in its brief, admits that "when the provisions are applied to a merchant or retailer, the [prosecution] must show that the accused sold the item with the intent that it be used with drugs before his knowledge of its use by a buyer comes into play."

that defendant also knew, or reasonably should have known, that the object would in fact be used as drug paraphernalia. However, the trial court erroneously derived three "material elements" from the statute and instructed the jury as follows:

> There are three material elements to the offense of Unlawful Delivery of Drug Paraphernalia, each of which must be proven by the prosecution beyond a reasonable doubt.
>
> These three elements are:
>
> 1. That the Defendant delivered, or possessed with intent to deliver, drug paraphernalia.
>
> 2. That the Defendant knew, or under circumstances where she reasonably should have known, that the drug paraphernalia would be used to inject, ingest, inhale, or otherwise introduce into the human body a controlled substance.
>
> 3. That the Defendant did so intentionally or knowingly.

State's Instruction No. 1.

The court then went on to basically track portions of HRS § 329–1, by instructing the jury that:

> "Drug paraphernalia" means all equipment, products, and materials of any kind which are used, intended for use, or designed for use, in ingesting, inhaling, or otherwise introducing into the human body a controlled substance. It includes but is not limited to objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing a controlled substance into the human body, such as glass pipes with or without screens, permanent screens, or punctured metal bowls, or ice pipes or chillers.

In determining whether an object is drug paraphernalia, you should consider in addition to all other logical relevant factors the following:

1. Statements by anyone in control of the object concerning its use;

2. Direct or circumstantial evidence of the intent of anyone in control of the object to deliver to any person whom the person in control knows, or should reasonably know, intends to use the object to ingest, inhale, or otherwise introduce into the human body a controlled substance.

State's Instruction No. 3.

Given these instructions, the jury could have easily concluded that it must first decide whether the pipes were in fact drug paraphernalia, and that this determination could be based on factors other than the defendant's specific intent that the pipes be used with illegal drugs. For instance, the jury could have concluded that the pipes had indeed been "designed for use" with illegal drugs by the Pipe Dreams Company, and that this fact, without more, made them drug paraphernalia.[9]

After initially determining that the pipes were drug paraphernalia, the jury could also have fairly inferred that it was to then decide whether Lee had delivered the objects *either* intentionally or knowingly. However, such a

---

[9] According to the federal analysis, the fact that a company intentionally designed a pipe for ingesting a controlled substance would only necessarily render the pipe "drug paraphernalia" in a prosecution of the company. Even if the company had intentionally designed a pipe for such illegal purpose, a merchant who subsequently sold the pipe could only be criminally liable under HRS § 329–43.5(b) if that merchant also specifically intended that the pipe be used with illegal drugs, no matter what the intention of the pipe's designer may have been.

decision–making process on the part of the jury would clearly be at odds with the requirements of the statute as construed by the federal analysis because it would allow the jury to convict Lee on the basis of something less than the threshold requirement that she specifically intended the pipes be used for ingesting a controlled substance.

Clearly, the defendant's intention is the only thing that necessarily makes an object which is capable of being used with a controlled substance prohibited drug paraphernalia. All the specific objects and factors listed in HRS § 329–1 are meant to be examples of the kinds of things a jury may consider in determining whether the defendant in a particular case possessed the requisite intention when delivering the object at issue. As the Idaho Supreme Court has convincingly stated:

> we view these [definitional] lists, as well as the other factors included in the statute to be used in determining whether an item is drug paraphernalia, as being solely helpful guides for juries in determining whether the defendant intended that an item be used with illegal drugs, thereby making it drug paraphernalia. That is, we do not think these lists and factors should be used in determining whether an item is, in fact, "drug paraphernalia" without also considering the defendant's state of mind. . . . This interpretation is most consistent with the Act's thrust and intent. Under our construction, then, a jury will never determine as a fact question whether an item is in and of itself "drug paraphernalia" without also considering the defendant's state of mind with respect to that item in using, marketing, or designing it. We think it clear that in nearly every case, the item in issue will be capable

of being used with a controlled substance, thereby making it "drug paraphernalia." The crucial decision under the Act, though, and what makes an item "drug paraphernalia" for purposes of the Act is whether the defendant intended that it be used with illegal drugs. We think it rare, indeed, that a defendant will ever be able to rebut the assertion that the item in question is, in fact, capable of being used as drug paraphernalia. But the defendant need not do so. Rather, with respect to [the statute], what the State must prove beyond a reasonable doubt is that the defendant used an item with an illegal drug (use), or, marketed an item with the intent that it be used with illegal drugs (intended for use), or, designed an item with the intent that it be used with illegal drugs (designed for use). . . . [T]here is nothing in the Model Act's legislative history to suggest that a jury should first decide if an item is, in and of itself, drug paraphernalia before determining the defendant's state of mind. Rather, it is clear that the framers of the Model Act . . . intended the definition of drug paraphernalia be determined by the defendant's state of mind, with evidence of the items associated with the defendant, and the lists and factors in [the Act], going toward proving the defendant's state of mind. Furthermore, since the crux of the statute is the defendant's intent, citizens are put on adequate notice of what is prohibited conduct, thereby extinguishing any fear of a citizen being prosecuted for conduct he or she did not intend to do.

*Newman*, 108 Idaho at 13–14, 696 P.2d at 864–65.

Accordingly, in a prosecution of a merchant under HRS § 329–43.5(b), the jury should be instructed that it must first find that the defendant–seller delivered the object(s) in question to the buyer with the specific intent that the object(s) be used with illegal drugs. The jury should be advised that in its determination, it can rely on the list of specific examples and factors included in HRS § 329–1, but that without the defendant's intent, none of these specific examples or factors, in and of themselves, can transform an object into drug paraphernalia. Rather, the fact that any of the examples or factors is present in the case may be used by the jury, along with any other relevant evidence proffered by the prosecution, to infer the defendant's specific intent or the lack of it. The jury should be further instructed that if it finds that the defendant did in fact deliver the object(s) with the requisite specific intent, thus converting the object(s) into prohibited drug paraphernalia, then it must determine whether the defendant also knew, or reasonably should have known, that the drug paraphernalia would be used as such.

The relevant trial court instructions to the jury in the present case did not adhere to the foregoing requirements, but instead allowed for the distinct possibility that the jury convicted Lee without finding that she specifically intended that the glass pipes be used with illegal drugs. Although Lee did not appeal the jury instructions on this issue, we vacate her conviction and remand the case for a new trial on the ground of plain error by the trial court. *See* Hawaiʻi Rules of Penal Procedure Rule 52(b) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court").

## C. **Lee's Other Contentions on Appeal**

Although the remainder of Lee's contentions on appeal have necessarily been mooted by our decision to vacate her conviction and remand the case for a new trial, we shall nevertheless address those claims and take this opportunity to clarify other significant aspects of this jurisdiction's drug paraphernalia statute in order to guide the circuit court in the new trial accorded the defendant.

### 1. **Lee's Motions for a Judgment of Acquittal**

Lee argues that the trial court erred in refusing to grant her successive motions for a judgment of acquittal. On appeal, the test for determining whether the trial court erred in refusing to grant a motion for judgment of acquittal is whether the evidence presented was such that a reasonable mind might fairly have concluded the defendant's guilt beyond a reasonable doubt. *State v. Rivera*, 62 Haw. 120, 612 P.2d 526 (1980).

Lee first argues that HRS § 329–43.5(b) requires the State to demonstrate her actual knowledge that Matthews would use the pipes he purchased with illegal drugs. Lee contends that, because Matthews was in fact an undercover police officer with no intention of ever using the pipes for an illegal purpose, it was factually and legally impossible for her to have had the requisite knowledge. Citing to *State v. Murphy*, 674 P.2d 1220 (Utah 1983), Lee claims that her situation is "exactly" the same as the one in *Murphy*. We disagree.

In *Murphy*, the Utah Supreme Court was faced with the familiar facial challenge to its state MDPA–based drug paraphernalia statute. Defendant–appellant in the case was a retail store owner convicted under Utah's statute because his salesperson had sold drug paraphernalia

to an undercover police agent. *Id.* at 1221. The court began its analysis by noting that the Utah statute was "patterned closely" after the MDPA. *Id.* The court then surveyed the applicable law, including many of the cases already discussed in this opinion, and held that, because the state must prove the defendant's intent, the Utah statute was facially valid and not void for vagueness. *Id.* at 1222.

The *Murphy* court then proceeded to consider "the problem of specific enforcement in light of the rationale for upholding the facial validity." *Id.* The court pointed out that unlike the MDPA, the Utah statute did not include the "reasonably should know" phrase, but instead required the state to prove that the defendant actually knew that the drug paraphernalia would be used as such. *Id.* at 1224. The court noted that this placed a very difficult burden upon the prosecution and went on to reverse the conviction, based on the following analysis:

> In this case, the State presented no evidence as to what appellant knew or did not know concerning the sale in question. The State did, however, present evidence as to the buyer's intent. The buyer, as a police informer, intended only to buy the items to gather evidence to be used to charge the appellant under the [Utah statute]. She did not intend to use the items with controlled substances. Therefore, it is legally and factually impossible for the appellant to have known that the items sold would be used for illicit purposes as required for conviction.

*Id.* at 1225.

Lee apparently fails to acknowledge that the Utah court's ruling in *Murphy* was premised on the fact that the

Utah statute solely requires *actual* knowledge on the part of the defendant–merchant. However, HRS § 329–43.5(b), like the MDPA, only requires the prosecution to demonstrate that the defendant should reasonably have known, based on the specific circumstances of the particular sale, that the buyer would use the drug paraphernalia at issue as such. Thus, under HRS § 329–43.5(b), the mere fact that the buyer is actually an undercover police officer, which fact is unknown to the defendant, cannot render it "factually and legally" *impossible* that the defendant should reasonably have known that the items sold would be used with illegal drugs.

Additionally, Lee argues that it is the buyer's intent that converts an object into drug paraphernalia and, thus, the object sold cannot be drug paraphernalia if the buyer is an undercover police officer. As discussed previously, it is the seller's, and not the buyer's, intent that determines whether the object is or is not drug paraphernalia. We therefore hold the trial court did not err in denying Lee's motions for a judgment of acquittal.

### 2. **Lee's Proposed Jury Instructions**

Lee asserts that the trial court erroneously refused to give two of her proposed instructions to the jury. "When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Kelekolio*, 74 Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (citations omitted).

At the settlement of jury instructions, the court refused to give Defendant's Instruction No. 1, which stated:

The testimony in this case shows that on dates charged in the indictment, that is November 17, 1989, November 27, 1989, December 20, 1989, January 8, 1990, and February 8, 1990, Bruce Matthews was working in the [sic] undercover capacity for the Honolulu Police Department. At the time that he made the purchases from SUN NA LEE which eventually lead [sic] to the indictment in this case against Ms. LEE, he was working in a capacity as a police officer for the Honolulu Police Department. Further, at the time of the purchases he had no intent to use the items so purchased to inject, ingest, inhale, or otherwise introduce into his body a controlled substance with the items recovered.

You may consider Officer Matthews' undercover capacity in deciding whether the State has proved every element of the offense as charged.

Lee's contention that the trial court erred in refusing to give her instruction No. 1 is essentially the same as her argument in support of her various motions for a judgment of acquittal, that is, she claims that the prosecution is required to demonstrate her actual knowledge that Matthews intended to use the pipes to ingest illegal drugs, and that it would be factually and legally impossible for the prosecution to prove actual knowledge because Matthews could have had no such intent.

Contrary to her contention, the prosecution was not required to demonstrate Lee's actual knowledge. All the prosecution needed to demonstrate was that Lee reasonably should have known that Matthews would use the pipes to ingest illegal drugs. Matthews's status as an undercover police officer bears no relevance to the question whether Lee should have reasonably known that he

would use the pipes to ingest illegal drugs because Lee was unaware of his status. Accordingly, we hold that the court was correct in refusing to give Lee's instruction No. 1.

In instructing the jury regarding "drug paraphernalia" as defined in HRS § 329–1, Lee contends that the trial court erred in allowing State's Instruction No. 3, which included only two of the fourteen factors enumerated in the statute, and in refusing to give her proffered instruction No. 3, which included thirteen of the fourteen factors.[10] Specifically, the prosecution's proffered instruction listed only factor 1 and paraphrased factor 6 while Lee's instruction only omitted factor 14. Lee argues that the inclusion of only two of the fourteen factors misled the jury as to the relevant law, and thus denied her a fair trial.

The prosecution argues that the trial court was not required to give an instruction that was not supported by the evidence. According to the prosecution, no evidence was adduced at trial to support the other factors, except for factors 7, 8, 10, 11, and 13. Nevertheless, the prosecution maintains that it was within the trial court's discretion to refuse any requested instruction which was adequately covered by other instructions that were given. The prosecution claims that factor 6 can function as an omnibus factor because it includes a reference to any "direct or circumstantial evidence of the intent of an owner." The prosecution appears to be arguing that because all fourteen factors ultimately go to the question of the seller's intent, the general language of factor 6 was, in and of itself, "sufficiently broad to cover all the other factors listed."

---

[10] *See supra* note 5.

The prosecution's argument is not persuasive. Although the prosecution is correct that all fourteen listed factors ultimately go to the basic question of the defendant's intent because it is only that intent which transforms an object which is capable of being used with a controlled substance into prohibited drug paraphernalia, it seems highly unlikely that all fourteen of these factors can somehow be adequately "covered" by just one of them. In a prosecution under HRS § 329–43.5(b), the trial court should, as a matter of course, provide the jury with an instruction enumerating all fourteen factors listed in the statutory definition of drug paraphernalia. This procedure will ensure that the jury is completely instructed in every case. We believe the jury should be allowed to consider whether the presence or absence of any of the fourteen specific factors implies anything about the defendant's intent or the lack of it. Therefore, on remand of this case, the trial court should instruct the jury on all of the fourteen factors included in the § 329–1 definition. However, the jury should always be instructed that the prosecution need not demonstrate the presence of any of the fourteen factors in order to prove the defendant's intent. That is, the mere absence of any of these factors in a particular case does not mean that the prosecution cannot prove defendant's intent by other means. Pursuant to HRS § 329–1, the fourteen factors are to be considered "in addition to all other logically relevant factors[.]"

### 3. Statutory Mens Rea Requirement

Finally, Lee argues that HRS § 329–43.5(b) violates the mandate of HRS § 702–204 that every criminal offense contain a specific *mens rea* requirement. Lee's contention presents us with a question of law which is freely reviewable. *See Amfac, Inc. v. Waikiki Beach-*

*comber Investment Co.*, 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992).

HRS § 702–204 (1985) provides:

> Except as provided in section 702–212 [regarding violations and strict liability crimes], a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense. When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly.

Lee essentially contends that because the phrase "reasonably should know" is not specifically listed as a state of mind in HRS § 702–204, HRS § 329–43.5(b) must be lacking the required *mens rea*. Lee's argument lacks merit.

As previously discussed, because HRS § 329–43.5(b) provides that it is unlawful for any person to "deliver" drug paraphernalia, the statute necessarily requires the prosecution to prove that the defendant specifically intended that the object "delivered" be used with illegal drugs because according to the § 329–1 definition, only the defendant's intent can transform an object into prohibited "drug paraphernalia." Therefore, HRS § 329–43.5(b) contains the *mens rea* requirement of "intentionally." The fact that the statute contains *additional* state of mind requirements — "knowing, or under circumstances where one reasonably should know" — can only serve to highlight the untenability of Lee's argument that HRS § 329–43.5(b) fails to establish a *scienter* requirement.

## III.  CONCLUSION

Based on the foregoing, we vacate Lee's conviction and sentence, and remand this case for a new trial with jury instructions consistent with this opinion, including a list of all fourteen factors enumerated in HRS § 329–1.

On the briefs:

*William A. Harrison* for defendant–appellant Sun Na Lee.

*Caroline M. Mee*, Deputy Prosecuting Attorney, for plaintiff–appellee.

*Carl M. Varady* for Amicus Curiae American Civil Liberties Union of Hawaiʻi Foundation.