46 P.3d 498

STATE of Hawai'i, Plaintiff–Appellee,

v.

Joel Keith KUPIHEA, Defendant–Appellant.

No. 22926.

Supreme Court of Hawai'i.

May 23, 2002.

Jon N. Ikenaga, Deputy Public Defender, on the briefs, for defendant-appellant.

Simone C. Polak, Deputy Prosecuting Attorney, County of Maui, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

### Opinion of the Court by ACOBA, J.

■ We hold that the conviction of Defendant–Appellant Joel Keith Kupihea (Defendant), under Hawai'i Revised Statutes (HRS) § 712–1242(1)(b)(i) (1993),[1] of promoting a dangerous drug in the second degree (Count I) must be affirmed, but his conviction of violating HRS § 329–43.5(a) (1993),[2] "prohibited acts relating to drug paraphernalia" (Count II), must be vacated and remanded for a new trial. With respect to Count I, we discern no error in a jury instruction describing methamphetamine as a dangerous drug and a controlled substance because the instruction merely reiterated relevant statutory terms of the offenses with which Defendant was charged. Also, no plain error was committed by the second circuit court (the court)[3] with respect to the requisite state of mind portion of the elements instruction relating to Count I, inasmuch as it was evident from another instruction that Plaintiff Appellee State of Hawai'i (the prosecution) was required to prove Defendant's knowing state of mind with respect to all elements of that offense.

With respect to Count II, we conclude that, to prove the crime of the "use" of drug paraphernalia, the prosecution must establish that a defendant acted intentionally, and thus the court's instruction to the jury reflecting such law was correct. However we hold that, on remand, with respect to Count II, the court should separately instruct the jury as to the definition of drug paraphernalia according to HRS § 329–1 (1993).[4] Lastly, we hold that the court was not required *sua sponte* to dismiss Count II as *de minimis* pursuant to HRS § 702–236 (1993).[5]

---

1. HRS § 712–1242, in relevant part states as follows:

 **Promoting a dangerous drug in the second degree.** (1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:
 . . .
 (b) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:
 (i) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers[.]
 . . . .
 (2) Promoting a dangerous drug in the second degree is a class B felony.
 (3) Notwithstanding any law to the contrary, if the commission of the offense of promoting a dangerous drug in the second degree under this section involved the possession or distribution of methamphetamine, or any of its salts, isomers, and salts of isomers, the person convicted shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment, the length of which shall be not less than six months and not greater than five years, at the discretion of the sentencing court. The person convicted shall not be eligible for parole during the mandatory period of imprisonment.

2. HRS § 329–43.5(a) states as follows:

 **Prohibited acts related to drug paraphernalia.** (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

3. The Honorable Artemio C. Baxa presided over this case.

4. HRS § 329–1 provides in pertinent part as follows:

 "Drug paraphernalia" means all equipment, products, and materials of any kind which are used, intended for use, or designed for use, in . . . packaging, . . . storing, containing, concealing, . . . a controlled substance. . . .
 *See infra* note 11.

5. HRS § 702–236 states:

 (1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:
 . . . .
 (b) Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
 (c) Presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.
 (2) The court shall not dismiss a prosecution under subsection (1)(c) of this section without filing a written statement of its reasons.

## I.

On August 3, 1999, Defendant was found guilty of promoting a dangerous drug in the second degree, Count I, and prohibited acts relating to drug paraphernalia, Count II, as indicated *supra.* Judgment of conviction and sentence was filed on October 13, 1999. Defendant raises four points on appeal.

## II.

█ Defendant argues that the court committed plain error in giving Instruction No. 15, which read as follows: "Methamphetamine is a dangerous drug and controlled substance under the laws of the State of Hawai'i." He maintains that "[t]he jury was *not* required to find that methamphetamine was a 'dangerous' drug[,]" (emphasis in original), and thus, the instruction "constituted impermissible commentary on the evidence by the court[,]" citing *State v. Nomura,* 79 Hawai'i 413, 903 P.2d 718 (App.), *cert. denied,* 80 Hawai'i 187, 907 P.2d 773 (1995). *See id.* at 417, 903 P.2d at 722 (stating that "[Hawai'i Rules of Evidence (HRE) Rule 1102 (1993) [6]] requires the court to instruct the jury on the law but precludes the court from commenting upon the evidence") (citation omitted)). He asserts that the "dangerous drug" reference "was highly prejudicial to [Defendant]" and "caused the jury to be prejudiced against him." The prosecution points out that the term "dangerous drug" was also employed in Instruction No. 17.[7]

We discern no error in the use of the term "dangerous drug," because it merely refers to the name of the offense for which Defendant was charged in Count I and reiterates that the basis of the charge was possession of methamphetamine, a specific drug encompassed within the generic statutory category of "dangerous drug" to which HRS 712–1242(1)(b)(i) applies. In light of this, we do not believe the reference to "dangerous

drug" had any collateral prejudicial effect on the jury's consideration of the charge in Count II.

In Instruction No. 15, the court informed the jury that methamphetamine was also a controlled substance under state law. The reference in Instruction No. 15 to a "controlled substance" relates to the Count II charge and simply restates the statutory language of HRS § 329–43.5(a), which makes use or possession with intent to use a thing in the prescribed relation to a controlled substance, a crime. In any event, the court had the duty to inform the jury that methamphetamine was a "dangerous drug" as a matter of law for purposes of the offense defined in HRS § 712–1242(1)(b)(i) and was also a "controlled substance" as a matter of law for purposes of the offense defined in HRS § 329–43.5.

## III.

█ Secondly, Defendant complains that the court committed plain error in failing to instruct the jury in Count I and Count II that he "must have knowingly possessed the drug and [the] paraphernalia."

As to Count I, the court instructed the jury in Instruction No. 13 as follows:

In Count One of the Indictment, the Defendant, JOEL KEITH KUPIHEA, is charged with the offense of Promoting a Dangerous Drug in the Second Degree.

A person commits the offense of Promoting a Dangerous Drug in the Second Degree if he [or she] knowingly possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of one-eighth ounce or more, containing methamphetamine or any of its respective salts, isomers, and salts of isomers.

There are three material elements of the offense of Promoting a Dangerous Drug in

---

**6.** HRE Rule 1102 states:

The court shall instruct the jury regarding the law applicable to the facts of the case, but shall not comment upon the evidence. It shall also inform the jury that they [sic] are the exclusive judges of all questions of fact and the credibility of witnesses.

**7.** Instruction No. 17 read as follows:

The fact that a person engaged in the conduct specified by any section in this part (Offenses Related to Drugs and Intoxicating Compounds) is prima facie evidence that the person engaged in that conduct with the knowledge of the character, nature, and quantity of the dangerous drug possessed.

the Second Degree, each of which the prosecution must prove beyond a reasonable doubt. These three elements are:

1. That, on or about November 22, 1998, in the County of Maui, State of Hawaii the Defendant possessed one or more preparations, compounds, mixtures, or substances of an aggregate weight of one-eighth ounce or more; and

2. That the one or more preparations, compounds, mixtures, or substances contained methamphetamine or any of its respective salts, isomers, and salts of isomers; and

3. *That the Defendant did so knowingly.*

(Emphasis added.)

Defendant maintains that Instruction No. 13 was faulty because, as written, it "placed the mens rea element [*i.e.*, the requisite "knowing" state of mind] at the end of the instruction without specifying whether it referred to both elements or only the latter element." The prosecution urges that Instruction No. 26 "specifically instructed the jury that the . . . mental state of 'knowingly' . . . applied to each element of the offense of Promoting a Dangerous Drug in the Second Degree[.]" Instruction No. 26 advised that "[a] person is not guilty of an offense unless he [or she] acted intentionally or knowingly as the law specifies *with respect to each element of the offense.*" (Emphasis added.)

■ In reviewing "a trial court's issuance or refusal of a jury instruction[,] . . . [we must determine] whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Balanza*, 93 Hawai'i 279, 283, 1 P.3d 281, 285 (2000) (internal quotation marks, brackets, and citations omitted). While in part duplicative of the third element of Instruction No. 13, we believe Instruction No. 26, taken together with Instruction No. 13, made clear that the prosecution was required to prove Defendant's knowing state of mind with respect to the elements of the drug promotion offense described in Count I.

## IV.

As to Count II, the court instructed the jury in Instruction No. 14 as follows:

In Count Two of the Indictment, the Defendant JOEL KEITH KUPIHEA, is charged with the offense of Prohibited Acts Related to Drug Paraphernalia.

A person commits the offense of Prohibited Acts Related to Drug Paraphernalia if he [or she] *uses an object with the intent, or possesses an object with the intent to use it, to pack, repack, store, contain, ingest, inhale, or otherwise introduce a controlled substance into the human body.*

There are two material elements of the offense of Prohibited Acts Related to Drug Paraphernalia, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That on or about November 22, 1998, in the County of Maui, State of Hawaii the Defendant used an object with the intent, or possessed an object with the intent to use it, to pack, repack, store, contain, ingest, inhale, or otherwise introduce into the human body a controlled substance, to wit, methamphetamine; and

2. That the object was drug paraphernalia, *to wit, a green plastic container and/or a clear plastic ziploc bag.*

(Emphases added.)

Defendant asserts that, pursuant to *State v. Jenkins*, 93 Hawai'i 87, 997 P.2d 13 (2000), where possession is the act prohibited and the statute does not specify a culpable state of mind, the jury must be instructed, with respect to the paraphernalia offense, that the defendant "(1) . . . intentionally or knowingly possessed the object; and (2) that he [or she] did so with a[n] intentional, knowing, or reckless state of mind as to the character of the object being drug paraphernalia." On the other hand, the prosecution contends that: (1) *Jenkins* only applies to HRS §§ 134–7(1) and 6(e) offenses, the firearm possession crimes involved in *Jenkins*; and (2) the jury was not erroneously instructed as to a "reckless" state of mind as it was in *Jenkins*.

Referring to the requirement in HRS § 702–202 (1993) that the defendant "know-

ingly procured or received the thing possessed," this court, in *Jenkins*, pointed out that the commentary on HRS § 702–202 indicated the words " 'thing possessed' [in HRS § 702–202] refers to the physical object per se; knowledge of particular qualities or properties of the physical object possessed is dealt with as a mens rea problem in subsequent sections." 93 Hawai'i at 111, 997 P.2d at 37.

Consequently, it was concluded that HRS § 702–202 "establishes [a knowing state of mind as] the scienter requisite only for the possession of a thing itself." *Id.* Noting that HRS § 702–208 (1993) stated that a knowing state of mind is also established if a person acted intentionally, this court determined that the culpable states of mind attendant to the act of possessing "the thing possessed" were either an intentional or knowing state of mind, but not a reckless one. *Id.* at 110, 997 P.2d at 36. Thus, *Jenkins* established that the prosecution must prove, in an offense charging illegal possession, that the defendant had either an intentional or knowing state of mind, with respect to the identity of the physical object per se. *See id.*

However, this court also pointed out that inasmuch as the commentary on HRS § 702–202 said that "knowledge of particular qualities or properties of the physical object possessed is dealt with as a mens rea problem in subsequent sections," the statute charging the specific offense involved must be consulted to determine the defendant's requisite state of mind with respect to the attendant circumstance of "qualities or properties of the physical object possessed." *Jenkins*, 93 Hawai'i at 111, 997 P.2d at 37. But where, as in *Jenkins*, the defendant was charged with a possession offense under a statute which lacked any specific state of mind element, *see id.* at 94–95, 997 P.2d at 20–21, the purported act of possession must be subjected to a two-part analysis.

8. HRS § 329–43.5 is not a part of the Hawai'i Penal Code (HPC). However, HRS § 701–102(3) (1993) states that "[t]he provisions of chapters 701 through 706 of the [HPC] are applicable to offenses defined by other statutes, unless the Code otherwise provides." *See also Jenkins*, 93 Hawai'i at 110–11, 997 P.2d at 36–37; *State v.*

This court then held that, in the absence of a prescribed culpable state of mind element, "possession," for the purposes of HRS § 134–7(b), must be analyzed under a two-prong test: (1) the prosecution must prove the "voluntary act" of "possession" of an object, as provided under HRS § 702–202, by "adduc[ing] evidence that the defendant knowingly procured or received an object, or was aware of his or her control of that object for a sufficient period to have terminated possession"; *Jenkins*, 93 Hawai'i at 111, 997 P.2d at 37 (citing HRS § 702–202) and (2) the prosecution must prove "the requisite state of mind with respect to the attendant circumstances—*i.e.*, the particular qualities of the object that make it illegal to possess it[,]" under HRS § 702–204. *Id.* As to the second prong, it was concluded that HRS § 702–204 (1993) directs that knowledge of the objective qualities or properties must be established by proving a person acted intentionally, knowingly, or recklessly.

### V.

■ We do not believe *Jenkins* is applicable in this case, but for reasons other than those espoused by the prosecution. "Use," in the context of HRS § 329–43.5, is a conduct element.[8] *See* HRS § 702–205. We observe that, in connection with this ground of criminal liability, the statute fails to expressly prescribe a culpable state of mind for use of drug paraphernalia. Ordinarily, where a statute does not assign a particular state of mind to the elements of a criminal offense, then the state of mind applied is intent, knowledge, or recklessness. *See* HRS § 702–204 ("When[, as here,] the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly."); *see also Jenkins*, 93 Hawai'i at 111, 997 P.2d at 37.

*Auwae*, 89 Hawai'i 59, 62, 968 P.2d 1070, 1073 (1998), *overruled in part on other grounds by Jenkins*, 93 Hawai'i at 112, 997 P.2d at 38. Therefore, provisions of the HPC, such as HRS §§ 702–202 and –204, are applicable to HRS § 329–43.5.

However in *State v. Lee*, 75 Haw. 80, 856 P.2d 1246 (1993), this court determined that, in the context of the crime of delivering drug paraphernalia, "[c]learly, the defendant's intention is the only thing that necessarily makes an object which is capable of being used with a controlled substance prohibited drug paraphernalia." *Id.* at 107, 856 P.2d at 1261. *Lee* is analogous to the instant case because the *Lee* decision was premised on the chapter 329 definition of "drug paraphernalia," which also applies to the crime of use of drug paraphernalia.

"Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993); *see also State v. Tauiliili*, 96 Hawai'i 195, 198, 29 P.3d 914, 917 (2001). In construing HRS § 329–1, which defines "drug paraphernalia," this court said, "according to the § 329–1 definition, only the defendant's intent can transform an object into prohibited 'drug paraphernalia.'" *Lee*, 75 Haw. at 116, 856 P.2d at 1265.

■ Because HRS § 329–43.5(a) incorporates the term "drug paraphernalia" as defined in HRS § 329–1, and this court has held that an intentional state of mind is required to render an object "drug parapher-

nalia," an intentional state of mind is in effect prescribed in HRS § 329–43.5(a) with respect to the use of drug paraphernalia. In this case, the court did so instruct the jury. Considering the foregoing analysis, it was not error for the court to do so.

With respect to "possession with intent to use," the second ground for criminal liability under HRS § 329–43.5, an intentional state of mind applies. Although "possession" is the crux of the prohibited conduct, here *Jenkins* is inapplicable.

■ *Jenkins* held that where a defendant was charged with a possession offense under a statute which lacked any specific state of mind element, *see* 93 Hawai'i at 94–95, 997 P.2d at 20–21, the purported act of possession must be subjected to a two-part analysis—(1) the prosecution must prove the "voluntary act" of "possession" of an object, as provided under HRS § 702–202, by "adduc[ing] evidence that the defendant knowingly procured or received an object, or was aware of his or her control of that object for a sufficient period to have terminated possession" and (2) the prosecution must prove "the requisite state of mind with respect to the attendant circumstances—*i.e.*, the particular qualities of the object that make it illegal to possess it[,]" under HRS § 702–204. *Id.* at 111–12, 997 P.2d at 37–38.[9]

9. *Jenkins* is not limited to cases where the voluntariness of possession has been raised as a *defense*. The voluntary nature of an act is part and parcel of the conduct element required to be proven by the prosecution. "[E]ach element of the offense" must be "prove[n] beyond a reasonable doubt." HRS § 701–114 (1993). HRS § 701–114 "announces the usual burden of proof in criminal cases; the prosecution must prove its case beyond a reasonable doubt. The matters ... include elements of the offense[.]" Commentary on HRS § 701–114. Thus, HRS § 702–200 (1993) is meant to require "as a minimum basis for the imposition of penal liability, conduct which includes a voluntary act or voluntary omission." Commentary on HRS § 702–200.

In that regard, "[i]n most penal cases the issue of whether the defendant's conduct includes a voluntary act or a voluntary omission will not be separately litigated [inasmuch as t]he voluntariness of relevant acts or omissions will be evident." *Id.* As indicated *supra*, HRS § 702–202 "makes it explicit that possession is an act, within the meaning of §§ 702–200 and [–]201, *if* the possessor knowingly procured or received the thing possessed or was aware of control thereof

for a sufficient period to have been able to terminate possession[,]" Commentary on HRS § 702–202 (emphasis added), a proposition confirmed in *Jenkins*. Hence, in proving the conduct element, the prosecution will have in fact presented evidence of the "voluntary act," HRS § 702–201 (1993), which, pursuant to HRS § 702–202, "includes possession," because the "elements of an offense [include] such ... conduct ... as ... [is] specified by the definition of the offense[.]" HRS § 702–205. The conduct described in a statute is an ingredient of *an offense* and thus must be proven by the prosecution. *See* Commentary on HRS § 702–205 ("[A] clear analysis requires that the various distinct ingredients *of an offense* be separately recognized." (Emphasis added.)).

The voluntariness of an act is a matter, then, that must be proven as part of the conduct element. Accordingly, it is incorrect to say that HRS § 702–202 and, hence, *Jenkins*, apply *only* if the voluntariness of the possession has been raised as a defense. To be accurate, it is opposing evidence of *involuntariness* that constitutes the defense referred to under 702–200. "The

However, by qualifying "possession" of paraphernalia as conduct in which a person engages with the "*intent* to use" such objects, the statute rests liability on action that is intentional in nature and thereby specifies the state of mind element. As HRS § 702–204 provides, a person is guilty of an offense if "the person acted intentionally, knowingly, recklessly, or negligently, *as the law specifies*, with respect to each element of the offense." (Emphasis added.) Whereas this second branch of the offense described in HRS § 329–43.5 specifies the culpable state of mind that must be proven, *Jenkins* is inapposite. Hence, the requisite state of mind that must be applied to each element, *see* HRS § 702–204, of this version of the paraphernalia offense, is an intentional one.

■ In the elements instruction, the court informed the jury that the prosecution was required to prove the Defendant "possessed an object with the intent to use it." That instruction correctly conveyed to the jurors that the culpable state of mind required for conviction was an intentional one.[10]

## VI.

■ Defendant also asserts that, in instructing the jury as to the second element in Instruction No. 14, *i.e.*, "[t]hat the object was drug paraphernalia, *to wit*, a green plastic

container and/or a clear plastic ziploc bag[,]" the court "essentially instruct[ed] the jury that if [it] found [Defendant] possessed the items, that the items were paraphernalia," resulting in "a commentary on this evidence by the court." (Emphasis added.) Under the circumstances of this case, we do not believe it was plain error to have used the words "to wit," inasmuch as Defendant was charged in that language. The indictment charged that Defendant "did use, or possess with intent to use, drug paraphernalia, *to wit, a green plastic container and/or a clear plastic ziplock bag* [.]" (Emphasis added.) Further, the instruction regarding the elements of the offense of Prohibited Acts Related to Drug Paraphernalia stated that one of the elements of the crime was "[t]hat the object [Defendant used or possessed with the intent to use as drug paraphernalia] was drug paraphernalia, *to wit, a green plastic container and/or a clear plastic ziplock bag.*" (Emphasis added.) The instruction thus identified what had been specified in the indictment as the specific objects alleged by the prosecution to be drug paraphernalia.

## VII.

■ We consider Defendant's contention that the trial court committed error in failing to define the term "drug paraphernalia" with

---

Code, by making the issue of *involuntariness* a defense, accordingly puts the ultimate burden on the defendant to inject that issue into the case." Commentary on HRS § 702–200 (emphasis added). Neither HRS § 702–202 itself, nor *Jenkins*, suggests that HRS § 702–202 is applicable only in the event the defendant claimed involuntariness; rather, proof of the voluntariness of possession is a precedent to criminal liability. "[I]llegal conduct must entail a voluntary act or omission in order to trigger criminal liability. *See* HRS § 702–200(1) (1993)." *Jenkins*, 93 Hawai'i at 110, 997 P.2d at 36 (footnote omitted).

**10.** According to the arresting officer whose version of the events was apparently believed by the jury, the officer observed Defendant remove a plastic bag from Defendant's pocket, hand it to another person, and instruct that person to discard it. A green container that held methamphetamine was enclosed within the plastic bag. As recounted *supra*, the plastic bag and container were the subjects of Count II of the complaint which charged the paraphernalia offense in the alternative, *i.e.*, that "[Defendant] use[d an ob-

ject] ... or ... possesse[d an object] with intent to use [it]." HRS § 329–43.5(a).

However, "there was no danger that the jury would be confused regarding the conduct of which [Defendant] was accused and that constituted the charged offense[,]" inasmuch as "the evidence adduced at trial did not establish more than one incident during which" Defendant was engaged in prohibited conduct and "concerned only a single episode." *State v. Valentine*, 93 Hawai'i 199, 208, 998 P.2d 479, 488 (2000). Thus, pursuant to *State v. Arceo*, 84 Hawai'i 1, 928 P.2d 843 (1996), an election by the prosecutor as to "the specific act upon which it [was] relying to establish the 'conduct' element of the charged offense[,] or ... a specific unanimity instruction" to the jury, *id.* at 33, 928 P.2d at 875, was not required. *See id.* at 32–33, 928 P.2d at 874–75 (election or specific unanimity instruction necessary to ensure that each juror convicted the defendant on the basis of the same incident of culpable conduct, where evidence adduced independent incidents, each of which could have been, but were not, charged as separate offenses).

respect to Count II. While the prosecution concedes this point, it maintains that the court's failure to do so was harmless because the essence of the drug paraphernalia definition was set forth in paragraph two of Instruction No. 14. We do not agree.

 First, Instruction No. 14 does not outline the definition of drug paraphernalia in a manner that would be easily understood by the jury. " '[I]t is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner[.]' " *State v. Culkin,* 97 Hawai'i 206, 214, 35 P.3d 233, 241 (2001) (quoting *State v. Kinnane,* 79 Hawai'i 46, 50, 897 P.2d 973, 977 (1995)). Instruction No. 14 reads, in part:

> A person commits the offense of Prohibited Acts Related to Drug Paraphernalia if he [or she] uses an object with the intent, or possesses an object with the intent to use it, to pack, repack, store, contain, ingest inhale, or otherwise introduce a controlled substance into the human body.
>
> There are two material elements of the offense of Prohibited Acts Related to Drug Paraphernalia, each of which the prosecution must prove beyond a reasonable doubt.
>
> These two elements are:
>
> 1. That on or about November 22, 1998, in the County of Maui, State of Hawaii, ... Defendant used an object with the intent, or possessed an object with the intent to use it, to pack, repack, store, contain, ingest, inhale, or otherwise introduce into the human body a controlled substance, to wit, methamphetamine; and
>
> 2. That *the object was drug paraphernalia,* to wit, a green plastic container and/or a clear plastic ziplock bag.

(Emphasis added.) From this instruction, the jury would not be able to deduce what drug paraphernalia is. Because " 'it is a grave error to submit a criminal case to a jury without accurately defining the offense charged and its elements[,]' " *State v. Jones,* 96 Hawai'i 161, 168, 29 P.3d 351, 358 (2001) (brackets omitted) (quoting *Jenkins,* 93 Hawai'i at 108, 997 P.2d at 34), we conclude that it was not harmless error for the court to have failed to define "drug paraphernalia" in the instant case. " '[A]n essential or material element of a crime is one whose specification with precise accuracy is necessary to establish the very illegality of the behavior[.]' " *State v. Vanstory,* 91 Hawai'i 33, 44, 979 P.2d 1059, 1070 (1999) (quoting *United States v. Johnson,* 152 F.3d 618, 630 (7th Cir.1998)) (brackets omitted). Whether or not the green plastic container or clear plastic ziplock bag constituted "drug paraphernalia" is, thus, a material element of the crime at issue and the phrase "drug paraphernalia" needed to be defined. *See Jenkins,* 93 Hawai'i at 108, 997 P.2d at 34 ("A defendant may not be convicted except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (Internal quotation marks and citation omitted.)). *Cf. State v. Alvarez,* 96 Hawai'i 42, 50, 25 P.3d 817, 825 (App.2001) (characterizing "[t]he trial court's failure to instruct the jury that the State was required to prove beyond a reasonable doubt" a material element of a crime charged as "prejudicially erroneous"). Accordingly, we instruct that, on remand, the court separately instruct the jury as to the definition of drug paraphernalia. While the court must do so, we do not believe the court is required to refer to all twelve categories of drug paraphernalia items or the fourteen factors enumerated in HRS § 329-1.[11]

---

11. "Drug paraphernalia" is defined in HRS § 329-1 as follows:

> [A]ll equipment, products, and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this chapter. *It includes, but is not limited to:*

> (1) Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing, or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;
>
> (2) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances;
>
> (3) Isomerization devices used, intended for use, or designed for use in increasing the

The broad definition of drug paraphernalia in the first paragraph of HRS § 329–1 is all inclusive, referring to "*all* equipment, products and materials of *any kind*[.]" (Emphases added.) Hence the twelve categories of items following the first paragraph are merely illustrative of what is "include[d in] but

potency of any species of plant which is a controlled substance;

(4) Testing equipment used, intended for use, or designed for use in identifying, or in analyzing the strength, effectiveness, or purity of controlled substances;

(5) Scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances;

(6) Diluents and adulterants; such as quinine hydrochloride, mannitol, mannite, dextrose, and lactose, used, intended for use, or designed for use in cutting controlled substances;

(7) Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marijuana;

(8) Blenders, bowls, containers, spoons, and mixing devices used, intended for use, or designed for use in compounding controlled substances;

(9) Capsules, balloons, envelopes, and other containers used, intended for use, or designed for use in packaging small quantities of controlled substances;

(10) Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances;

(11) Hypodermic syringes, needles, and other objects used, intended for use, or designed for use in parenterally injecting controlled substances into the human body;

(12) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body, such as:

(A) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(B) Water pipes;

(C) Carburetion tubes and devices;

(D) Smoking and carburetion masks;

(E) Roach clips: meaning objects used to hold burning materials, such as marijuana cigarettes, that have become too small or too short to be held in the hand;

(F) Miniature cocaine spoons, and cocaine vials;

(G) Chamber pipes;

(H) Carburetor pipes;

[are] not limit[s]," *id.*, on the general definition of paraphernalia already provided.

Likewise, the fourteen factors listed in HRS § 329–1 "in determining whether an object is drug paraphernalia" are not exclusive, but only "should [be] consider[ed] in addition to all other logically relevant factors[.]" *Id.* It is probable that not all items

(I) Electric pipes;

(J) Air-driven pipes;

(K) Chillums;

(L) Bongs; and

(M) Ice pipes or chillers.

In determining whether an object is drug paraphernalia, a court or other authority should consider, *in addition to all other logically relevant factors*, the following:

(1) Statements by an owner or by anyone in control of the object concerning its use;

(2) Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance;

(3) The proximity of the object, in time and space, to a direct violation of this chapter;

(4) The proximity of the object to controlled substances;

(5) The existence of any residue of controlled substances on the object;

(6) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to a person or persons whom the owner or person in control knows, or should reasonably know, intend to use the object to facilitate a violation of this chapter; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this chapter shall not prevent a finding that the object is intended for use, or designed for use as drug paraphernalia;

(7) Instructions, oral or written, provided with the object concerning its use;

(8) Descriptive materials accompanying the object which explain or depict its use;

(9) National and local advertising concerning its use;

(10) The manner in which the object is displayed for sale;

(11) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(12) Direct or circumstantial evidence of the ratio of sales of the object or objects to the total sales of the business enterprise;

(13) The existence and scope of legitimate uses for the object in the community; and

(14) Expert testimony concerning its use.

(Emphases added.)

or factors would be pertinent in any given case. Therefore, a trial court is not mandated to recite all twelve categories or all fourteen factors in its instructions. It should refer only to those items or factors having a rational basis in the evidence adduced at trial and not otherwise excludable.[12] *Cf. Kinnane,* 79 Hawai'i at 49, 897 P.2d at 976 (stating that the "trial court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting him [or her] of the included offense." (Internal quotation marks and citation omitted.)); *State v. Sneed,* 68 Haw. 463, 465, 718 P.2d 280, 282 (1986) (holding that, in the absence of such a rational basis in the evidence, the trial court should not instruct the jury as to included offenses); *but see Lee,* 75 Haw. at 115, 856 P.2d at 1264 ("In a prosecution under HRS § 329-43.5(b), the trial court should, as a matter of course, provide the jury with an instruction enumerating all fourteen factors listed in the statutory definition of drug paraphernalia."). Requiring a trial court to do otherwise may introduce irrelevant matters into the instructions and invite confusion and error.

## VIII.

■ Finally, Defendant claims that "the ... court plainly erred in failing to dismiss the paraphernalia charge[ ] as *de minimis* pursuant to HRS § 702-236 where the items were everyday household items not intended or designed for use as drug paraphernalia[.]" He quotes the comments of a legislator favoring passage of HRS § 329-43.5 that referred to "the prevalence of so-called 'head shops' ... [selling] ... [pipes] made for marijuana, for cocaine, for heroin, and all the assorted paraphernalia that accompany that." Comments of Representative Hayes, *reprinted in* 1988 House Journal, at 156-57. In that connection, he urges that "the ziploc bag and the plastic candy container did not actually threaten the harm or evil sought to be prevented by the law defining the offense, [that

is], preventing the sale of items specifically designed or intended for use as drug paraphernalia," and that "this case presents extenuations which cannot reasonably be regarded as envisaged by the legislature in forbidding the offense[.]"

■ However, we conclude that the broad definition of drug paraphernalia and the multiple examples of such contraband enumerated in HRS § 329-1 weigh against Defendant's contention that the ordinary nature of the containers possessed by Defendant did not involve the harm or evil sought to be avoided under HRS § 329-43.5 or amounted to extenuations that would not have been envisioned by the legislature. " '[W]e do not resort to legislative history to cloud a statutory text that is clear.' " *State v. Kalama,* 94 Hawai'i 60, 64, 8 P.3d 1224, 1228 (2000) (quoting *Ratzlaf v. United States,* 510 U.S. 135, 147-48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (citations omitted)). " '[O]ur duty in interpreting statutes is to give effect to the legislature's intent[,] which is obtained primarily from the language of the statute.' " *Id.* at 64, 8 P.3d at 1228 (quoting *Allstate Ins. Co. v. Hirose,* 77 Hawai'i 362, 364, 884 P.2d 1138, 1140 (1994)).

■ In that regard, HRS § 329-43.5 states in relevant part, as we have indicated, that "[i]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to ... pack, ... store, contain, [or] conceal ... a controlled substance" such as methamphetamine. Furthermore, as we have observed, HRS § 329-1 defines drug paraphernalia as including "*all* ... materials *of any kind* which are used ... in ... storing ... a controlled substance ... not limited to ... envelopes[ ] and other containers used ... in packaging small quantities of controlled substances." (Emphases added.) It is evident that, in enacting HRS § 329-1, the legislature cast a wide net, ensnaring not only containers that might ordinarily be thought of as used for "packaging small quantities of drugs," but *anything* used or possessed with the intent to use it for the prescribed purposes. Thus, contrary to De-

---

**12.** Consequently, in this case the court might instruct the jury as to HRS § 329-1(9) and (10). *See supra* note 11.

fendant's position, as stated *supra*, it is not the intrinsic nature of the thing that is determinative, but the culpable state of mind with which the thing is used, or possessed with intent to use, that "convert[s] the [thing] into prohibited drug paraphernalia." *Lee,* 75 Haw. at 109, 856 P.2d at 1262.

Under the broad definition employed by the legislature, Defendant's possession involved the harm or evil sought to be prevented by HRS § 329–43.5. Therefore, we cannot determine, on this record, any plain error, as contended by Defendant, in the court's failure *sua sponte* to dismiss Count II. Further, in light of the inclusive definition of drug paraphernalia employed and the extensive list of examples in HRS § 329–1, it cannot be said that the "ordinary" nature of the containers used by Defendant amounted to "extenuations" that would not have reasonably been envisioned by the legislature.

### IX.

In conclusion, we affirm the October 13, 1999 judgment of conviction and sentence as to Count I and vacate it as to Count II. Count II is remanded for a new trial consistent with this opinion.